# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DANAHER CORPORATION,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>GARDNER DENVER, INC. and<br>MICHAEL WEATHERRED,<br><br>　　　　　　　　Defendants. | Case No. 19-CV-1794-JPS<br><br>**ORDER** |

Plaintiff, Danaher Corporation ("Danaher"), has filed an amended motion to amend its complaint, (Docket #53, #64), in response to the Court's Order granting in part a motion to dismiss brought by Gardner Denver, Inc. ("Gardner Denver") and Michael Weatherred ("Weatherred") (collectively, "Defendants").[1] Danaher's motion is now fully briefed, and must be denied. If there was even a slender chance that Danaher could have amended its complaint to cure the deficiencies identified by the Court in its Order

---

[1] The parties also filed various motions to seal the complaint and supporting documents. (Docket #52, #56, #63, #67). The Court will grant the motions to seal, albeit skeptically, since, according to Danaher, the information contained in the memoranda, exhibits, and proposed amended complaint is confidential (if not a trade secret).

Defendants' unopposed motion for an extension of time to file dispositive motions (Docket #70) will be denied. In light of the COVID-19 pandemic, the Court will vacate the current dispositive motion deadline. The Court will reschedule the dates of its Trial Scheduling Order, (Docket #35), at such a time as circumstances warrant, but certainly not before the development of a safe and effective vaccine. If the parties certify that discovery is complete, they may file for summary judgment at any time.

partially granting the motion to dismiss (Docket #50), the Court would have invited those amendments.

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Courts favor granting leave to amend, but they act within their discretion to deny such leave when there is a substantial reason to do so. *Select Creations, Inc. v. Paliafito Am., Inc.*, 830 F. Supp. 1213, 1216 (E.D. Wis. 1993). Such reasons include undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 849 (7th Cir. 2002). An amendment is futile when "the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss." *Crestview Vill. Apartments v. U.S. Dep't of Housing & Urb. Dev.*, 383 F.3d 552, 558 (7th Cir. 2004). The Court of Appeals has stressed that Rule 15(a)(2) announces a "liberal amendment policy." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 521 (7th Cir. 2015).

Notwithstanding the liberal amendment policy, nothing in Danaher's amended complaint bears on the Court's conclusion that a meeting template which prompts the recorder to take attendance, monitor progress, and set goals is not a trade secret. The Court had the opportunity to evaluate the Template (or "Tool," as it is now called) against the relevant trade secret law, and determined that it does not rise to the level of a trade secret. Part of the Court's analysis considered the existence of the Tool's "Growth Bridge," a pithy feature that might also be titled, "To Do List."

Danaher's Growth Bridge does not provide a viewer with new, substantive, implementable information—in other words, there is no "secret" to the Tool.

Danaher now dresses up its description of the Growth Room Template as a "new, innovative business process" that remedies the gap between its operating companies' marketing leads and overall revenue growth. (Docket #65-2 at 8). Unfortunately for Danaher, this language does not change what the Growth Room Tool *is*. Danaher's allegation that "the Growth Room" is an actual place where weekly meetings are held is similarly unpersuasive. One would expect a board of directors to meet regularly, be apprised of salient key performance indicators ("KPIs"), and be prepared to address negative trends. The fact that these pieces of information are "displayed on the walls of the room for immediate reference" is convenient, but unmistakably, hardly innovative. *Id.* at 10.

Danaher's amended complaint is long on allegations regarding the company's confidentiality protocol in an attempt to marshal indicia of trade secrecy,[2] but short on actual secrecy. And the question remains: if this Growth Room Tool were to be considered a trade secret, what would happen to meetings? All of a sudden, it would be improper for a marketing and sales team to take attendance *and* conduct follow-up *and* measure KPIs *and* identify areas of improvement for the next meeting. Could trade secret infringement be avoided if the meeting forewent attendance? Or if the

---

[2]And even these efforts fall short of persuasion. As Defendants point out, Danaher's own materials demonstrate that the Growth Room Tool held a "Level 2" confidentiality status, a full step below trade secrets, which were afforded "Level 1" status. *See* (Docket #58 at 20). While not dispositive, this suggests that Danaher itself did not consider the Growth Room Tool a trade secret, which renders the motion to amend all the more vexing.

Page 3 of 5
Case 2:19-cv-01794-JPS   Filed 09/28/20   Page 3 of 5   Document 71

leader broke the meeting into two parts: a progress half and a strategy half? If the meeting did away with KPIs and to-do lists—perhaps the most rigorous requirements of the Growth Room Tool—then what would be the point of having a meeting at all? The practical effects of Danaher's arguments run blithely into absurdity.

The Growth Room Tool has worked well for Danaher—it teaches consistency and organization, and many Danaher employees have found it useful. But it does not prescribe a method for success any more secretively than a business school lecture might. Indeed, Gardner Denver did not think twice about sharing it with the world, even as Gardner Denver claimed to derive great use from it. This goes back to the fact that consistency and organization are important—but that is no secret.

The Court addresses one last allegation that has been tucked into Danaher's proposed amended complaint. Danaher claims that "if the Proprietary Interest Agreement had imposed a temporal limitation of any duration on Weatherred's non-disclosure obligations, Weatherred would have violated the Agreement," in light of the time frame in which Weatherred left Danaher to work at Gardner Denver. *Id.* at 71. This allegation does nothing to help Danaher, because, fatally, the Proprietary Interest Agreement did not impose a temporal limitation. The Court will not rewrite a contract developed by sophisticated parties negotiating at arms' length in order to give credence to an already specious claim.

The Court will not award fees or sanctions at this juncture. While the proposed amended complaint did not remedy the original complaint, the Court will not penalize counsel for advocating zealously. It suffices to say, however, that a second motion to amend would not be well received.

Page 4 of 5
Case 2:19-cv-01794-JPS   Filed 09/28/20   Page 4 of 5   Document 71

Accordingly,

**IT IS ORDERED** that the parties' motions to seal (Docket #52, #56, #63, #67) be and the same are hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants' unopposed motion to extend the time to file dispositive motions (Docket #70) be and the same is hereby **DENIED**; the parties' previously extended dispositive motion deadline of October 9, 2020 be and the same is hereby **VACATED**; and

**IT IS FURTHER ORDERED** that the plaintiff's amended motion to amend the complaint (Docket #64) be and the same is hereby **DENIED** and the plaintiff's original motion to amend the complaint (Docket #53) be and the same is hereby **DENIED as moot**.

Dated at Milwaukee, Wisconsin, this 28th day of September, 2020.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge